UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
*Southern Division*

KENNETH HINTON                                *

Petitioner                                         *

v.                                                       *            **Civil Action No. GJH-20-0374**

WARDEN JAMA ACUFF, and              *
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND                        *

Respondents                                      *

***

## MEMORANDUM OPINION

In their Answer to the above-entitled Petition for Writ of Habeas Corpus pursuant to 28

U.S.C. § 2254, Respondents assert that Petitioner's claims are procedurally defaulted and without

merit.  ECF No. 70.  No hearing is necessary to resolve the matters pending.  *See* Rule 8(a), *Rules*

*Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md.

2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing

under 28 U.S.C. §2254(e)(2)).  For the reasons set forth below, the Petition shall be dismissed and

a certificate of appealability shall not issue.

I.        **Background**

A.  **Jury Trial**

Hinton was charged in the Circuit Court for Montgomery County, Maryland with twenty-

seven counts of perjury by affidavit, thirteen counts of false entry in a public record, seven counts

of theft, one count of false application for public assistance, and one count of fraud. ECF No. 18-

1 at 3-4. On January 9, 2015, the circuit court granted Hinton's amended motion to dismiss based

on the statute of limitations, dismissing all thirteen counts of false entry in a public record, and one

count of perjury by affidavit. ECF No. 18-1 at 24; ECF No. 70-9. On August 28, 2015, after trial

by jury, Hinton was found guilty of twenty-six counts of perjury by affidavit and one count of theft

scheme between $1,000 and $10,000. ECF No. 70-18 at 13-14.[1] On November 12, 2015 Hinton

was sentenced to an aggregate seventy years' incarceration. ECF No. 70-20 at 8.

### B.  Direct Appeal and Post-Conviction

Hinton's conviction was affirmed on direct appeal by the Court of Special Appeals on

March 15, 2017.[2] ECF No. 70-1 at 161-184. The Court of Special Appeals described the facts as

follows:

> Between June 2011 and March 2012, nine lawsuits filed in the Circuit Court for
> Montgomery County listed [Hinton] or his friends or relatives as the named
> plaintiffs. Those friends and relatives included: Carmen Ramos, [Hinton's] ex-
> girlfriend; Charles Rash, listed as [Hinton's] brother on his 2011 federal tax return
> but who was apparently in a federal prison in Virginia at the time the complaints
> were filed; Ed Johnstein, allegedly a lessee of an apartment associated with
> [Hinton]; and Kameron Anthony, an alias for Kameron Anthony Hinton, [Hinton's]
> 12–year-old son. Affidavits of service relating to the lawsuits were allegedly signed
> by [Hinton] (on one occasion styling himself K.A. Henton), Dawn McCormick, his
> former wife and Kameron Hinton's mother, Ed Johnstein, and Ed Johnson.
>
> In each suit, a request for waiver of prepaid court costs was filed, bearing the
> purported signature of either [Hinton], Kameron Anthony, Carmon Ramos, Charles
> Rash, or Ed Johnstein. The circuit court granted the nine waiver requests, resulting
> in a waiver of prepaid court fees in the amount of $1,215.
>
> In 2015, two circuit court officials observed, during a routine audit of fee waiver
> requests, that the complaints in the nine lawsuits contained "remarkably similar"

---

[1]     On September 4, 2014 the circuit court granted Hinton's motion to sever, resulting in a
separate trial on six counts of theft, one count of fraud, and one count of false application for public
assistance.

[2]     Hinton asserted claims unrelated to his federal habeas petition, including whether the
evidence was insufficient to support the convictions, whether the convictions for perjury based on
both Requests and Statements filed in each case were "multiplicitous" and whether they violated
double jeopardy, whether the convictions for perjury merge into his convictions for theft scheme,
and whether the sentences imposed constitute cruel and unusual punishment under the Eighth
Amendment. *Hinton v. State*, No. 2119, Sept. term, 2015, 2017 WL 999477, at *1 (Md. Ct. Spec.
App. Mar. 15, 2017).

language, type fonts, and margins, along with "an unusual array of charges" of deceptive practices against manufacturers of goods and providers of services. The officials also found "some irregularities in how they were being filed," including the fact that, despite listing different plaintiffs and servers of process, the complaints, fee waiver requests, financial statements, and affidavits of service all referenced the same set of names, addresses, and telephone numbers. As a result, the court officials forwarded the matter to the Montgomery County Office of the State's Attorney for a fraud investigation.

Daniel Wortman undertook an extensive investigation on behalf of the Office of the State's Attorney. Wortman first created a spreadsheet detailing the nine lawsuits and found many commonalities, including overlapping phone numbers, addresses, and names, all of which related back to [Hinton]. With [Hinton] as the target of his investigation, Wortman analyzed [Hinton's] tax returns, bank accounts, vehicle ownership records, employment history, debt, and receipt of public assistance benefits. Execution of a search warrant at one address associated with [Hinton] yielded several computers and cell phones and numerous pages of written documents and spreadsheets.

Wortman's investigation ultimately revealed that during 2011 and 2012, notwithstanding his claims of poverty in his requests for waiver of court fees and accompanying financial statements, [Hinton] owned at least one income-producing business and maintained other employment, earning between $5,500 and $7,500 per month. At the same time, however, [Hinton] received unemployment insurance benefits. In addition, between July 2011 and September 2012, [Hinton] received medical assistance and an average of $235 per month in food stamps from the Montgomery County Department of Health and Human Services, while, against regulations, receiving simultaneous benefits in the amount of $200 per month from the District of Columbia. [Hinton] also maintained at least five bank accounts, multiple credit cards, and ownership of at least one vehicle and real property in Texas, none of which was disclosed on his requests for waiver of fees or financial statements filed with the circuit court.

At trial, Dawn McCormick denied any involvement by her or her son, Kameron Hinton, in the Montgomery County lawsuits purportedly involving them. Based on knowledge gained through her marriage to [Hinton], McCormick further denied the veracity of many of the statements made in the requests for waiver of fees in those cases. Carmen Ramos similarly denied involvement in any lawsuit filed in Montgomery County listing her as the plaintiff and the veracity of the statements in the related request for waiver of fees. Both women testified that the handwriting on the relevant court documents, regardless of the names signed, was [Hinton's].

The trial court denied [Hinton's] motion for judgment of acquittal at the close of the State's case-in-chief. [Hinton] did not present any witnesses in his defense, and the court again denied his renewed motion for judgment of acquittal at the close of all the evidence.

*Hinton v. State*, No. 2119, Sept. term, 2015, 2017 WL 999477, at *2–3 (Md. Ct. Spec. App. Mar. 15, 2017). The Maryland Court of Appeals dismissed Hinton's petition for certiorari on July 28, 2017. ECF No. 70-1 at 232.

Hinton filed a pro se petition for post-conviction relief on April 5, 2017. ECF No. ECF 18-1 at 92-103; 109-118.  Hearings were held on June 8, 2018 and December 21, 2018.  ECF No. 70-21; ECF No. 70-22. The circuit court issued a memorandum and order denying Hinton's petition on April 26, 2019. ECF No. 18-1 at 121-134. Hinton filed an application for leave to appeal with the Court of Special Appeals on May 8, 2019. ECF No. 18-2 at 8-11; ECF No. 70-1 at 289-305. The Court of Special Appeals denied leave on October 21, 2019. ECF No. 70-1 at 317-318.

### C. Writ of Actual Innocence

Hinton filed a petition for a writ of actual innocence with the circuit court on October 10, 2018. ECF No. 70-1 at 235-251. Hinton based his petition on alleged "new evidence," contending he was the victim of identity theft and the state's trial exhibits were forgeries. *Id.* Hearings were held on September 15, 2021 and July 15, 2022. ECF No. 70-23; ECF No. 70-24. The circuit court, ruling from the bench, denied Hinton's petition for a writ of actual innocence on July 15, 2022, concluding that his supporting documentation was not "newly discovered" evidence. *Id.* at 24. Hinton did not appeal the ruling.

### D. Petition for Habeas Corpus

Hinton submitted his federal Petition for habeas corpus relief on February 8, 2020. ECF No. 1. He asserts the following claims: (1) the trial court deprived him of counsel during sentencing, (2) the trial court failed to hold a prompt hearing on his *pro se* motion seeking to discharge his trial counsel, (3) trial counsel was ineffective because he filed a frivolous motion for a chemist, (4) trial counsel was ineffective because he failed to recognize that the state's attorney

4

disclosed his sensitive, personal information, (5) trial counsel was ineffective because he failed to meet and confer with him to review discovery materials, (6) trial counsel was ineffective because he failed to assert a statute of limitations defense, (7) trial counsel was ineffective because he failed to advise him of the full extent of the penalties in the event of conviction, (8) trial counsel was ineffective because he failed to appear at his pretrial hearing and failed to review and return eighty pages of discovery materials, (9) the trial court's order of pretrial detention without bond was prejudicial and unwarranted, (10) the trial court failed to timely deliver the pretrial sentencing report and sentencing guidelines, (11) the trial court failed to provide competent legal representation during trial, (12) trial counsel was ineffective because he did not hire a handwriting expert, (13) the trial judge abused his authority because he failed to provide standby counsel, (14) the trial judge abused his discretion in failing to provide competent counsel for the evidentiary hearing on his pro se motions for a new trial, (15) the trial judge abused his discretion in failing to recuse himself, (16) he did not knowingly and intelligently waive the right to counsel, (17) trial counsel acted in bad faith in the delivery of discovery materials, and (18) the trial judge abused his discretion in failing to conduct a hearing when he advised the trial court that his appointed counsel used racial remarks.[3]

## II.    Standard of Review

### A.  Procedural Default

---

[3]      Hinton's petition says "See Attached Exhibit A & B" for additional habeas claims. ECF No. 1 at 5.  Exhibit "B" (ECF No. 1-3) is a pleading entitled "State's Motion for Writ and Criminal Processing of Defendant." Hinton has highlighted portions of this pleading but has not stated a claim. "Federal district courts are not required to conjure up questions never squarely presented to them in construing pro se complaints, despite requirement that courts construe such complaints liberally." *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985). In any event, as discussed herein, Hinton only properly exhausted three claims. Thus, to the extent Hinton intended Exhibit "B" to be an additional claim, it would be unexhausted.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The Fourth Circuit explained in *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998):

If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.*, the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a

6

procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

### B.  Actual Innocence

"Claims of actual innocence, whether presented as freestanding ones or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted). A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers " 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial,'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28).

### C.  Analysis Under 28 U.S.C. § 2254

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard

is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Pursuant to the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, "an unreasonable application of federal law is different from an incorrect application of federal law."  *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."

*Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts.  *Id*.  "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly."  *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).  This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)."  *Id*. at 379.

### III.   Analysis

### A.  Procedural Default

Respondents contend that Hinton's claims are all procedurally defaulted because he raised the claims in his petition for a writ of actual innocence but failed to seek an appeal when the petition was denied. ECF No. 70 at 61-68. However, to comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). The record reflects that Hinton invoked one complete round of the appellate process for three of his eighteen claims: Ground Two (trial court failed to hold a

prompt hearing on his pro se motion seeking to discharge his trial counsel), Ground Nine (denial of bond before trial)**,** and Ground Seventeen (trial counsel acted in bad faith in the delivery of discovery materials).

All seventeen of Hinton's claims were included in his post-conviction application, acknowledged at his two post-conviction hearings, and addressed by the circuit court in its ruling denying relief. ECF No. 18-1 at 109-113, 114-118; ECF No. 70-21 at 12-13, 27; ECF No. 70-22 at 5-9; ECF No. 18-1 at 121-134. When Hinton sought leave to appeal to the Court of Special Appeals, he only briefed Ground One, Ground Two, Ground Nine, and Ground Seventeen. ECF No. 70-1 at 289-305.[4]

To exhaust a claim through post-conviction proceedings, the claim must be raised in a petition filed in the circuit court and in an application for leave to appeal to the Court of Special Appeals. Md. Code Ann., Crim. Proc. § 7-109. If the Court of Special Appeals denies the application, no further review is available, and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202. However, if the application is granted but denied on the merits, the petitioner must file a petition for writ of certiorari to the Court of Appeals. *Williams v. State*, 292 Md. 201, 210-211 (1981). Because Hinton failed to raise Grounds Three, Four, Five, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Eighteen in his application for leave to appeal to the Court of Special Appeals, these claims are unexhausted. Maryland courts would now consider the claims procedurally barred under Maryland Rule 8-204(b)(2)(A).

Respondents contend that Ground One is also unexhausted because it was never presented to the circuit court. ECF No. 70 at 71. Hinton complains in Ground One that he was deprived of

---

[4]     Respondents argue that only one claim—Ground One was included in the application for leave to appeal. ECF No. 70 at 64. However, Hinton also submitted a brief that included Grounds Two, Nine, and Seventeen. ECF No. 70-1 at 289-305.

counsel during his sentencing hearing, which was a "critical stage" of the proceedings. ECF No. 1 at 5. However, Hinton's post-conviction claim unequivocally asserted that the trial court erred in refusing to provide him with *standby counsel* during his sentencing hearing. ECF No. 70-21 at 27-28; 70-22 at 5. "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." *Breard*, 134 F.3d at 619. Hinton's claim that he was deprived of counsel at sentencing is a different legal theory with a different factual basis than the claim advanced during post-conviction proceedings that he was denied standby counsel while appearing *pro se*. Since Maryland law only permits one post-conviction petition, Hinton may no longer pursue Ground One in state court. *See* Md. Code Ann., Crim. Proc. § 7-103(a). Accordingly, Ground One is unexhausted and procedurally barred.[5]

Respondents also contend that Ground Seventeen is procedurally defaulted because the circuit court dismissed it on a state procedural rule. ECF No. 70 at 80. Hinton complains in Ground Seventeen that his trial counsel acted in bad faith when he failed to deliver him all 12,000 pages of discovery material. ECF No. 1-2 at 10. The circuit court clearly and expressly dismissed the claim as waived pursuant to Md. Code Ann., Crim. Proc. § 7-106 (b)(1)(i) because Hinton could have brought the claim before trial, during trial, or on direct appeal. ECF No. 18-1 at 132. Ground Seventeen is procedurally defaulted pursuant to the independent and adequate state ground doctrine.

### B. Actual Innocence

Hinton has invoked the "actual innocence" gateway, seeking to excuse the procedural default, repeating the arguments made in his state court petition for writ of actual innocence. ECF

---

[5] To the extent Ground One could be construed to encompass Hinton's claim that he was denied standby counsel at his sentencing hearing, this claim was omitted from his application for leave to appeal and accompanying brief and is therefore also unexhausted.

No. 71 at 3. Where a state court looks at the same body of relevant evidence and applies essentially the same legal standard to that evidence that the federal court does in resolving an actual innocence claim, AEDPA requires that the state court's findings of fact not be casually cast aside. 28 U.S.C.A. § 2254(e)(1). *Sharpe v. Bell*, 593 F.3d 372 (4th Cir. 2010).

Hinton argued in state court that he was actually innocent because he was the victim of identity theft and the exhibits used at trial were forgeries of his signature. ECF No. 70-1 at 241. Hinton relied upon three documents as "newly discovered evidence:" an identity theft affidavit signed by Hinton and submitted to the Feltham Police Department on December 9, 2009 (ECF No. 70-1 at 244-247); Fidelity National Card Services, Inc. notification of fraudulent activity dated May 16, 2011 (ECF No. 70-1 at 248); and an Equifax report of identity theft in 2011 (ECF No. 70-1 at 249). The circuit court considered these documents and Hinton's arguments, concluding:

> There's been nothing that you presented that indicates that there is evidence that you either didn't have at the time -- as [the State] points out, the documents that you had attached are Bates-stamped. Those people testified at trial -- Bates-stamped meaning that they were part of the discovery that the State provided pretrial that you were subsequently provided by [your trial counsel], both through a thumb drive, which you indicate you didn't receive, and through boxes that were delivered -- nonetheless, Bates-stamped meaning they were provided by the State to Defense. Those were turned over to you, so they were documents that you had. And the second prong of the newly discovered evidence issue is whether or not you could have diligently discovered those items, some of which -- or I think both, both of those documents related to you and your credit. So, you would have had access to those documents as easily as anybody else.
>
> So, for all those reasons, I'm going to deny your petition for a writ of actual innocence…

ECF No. 70-24 at 23-24.

The record supports the circuit court's conclusion that Hinton's evidence cannot be considered "new." The documents were available to Hinton as part of pretrial discovery. The Court

also notes that it appears Hinton initiated the creation of these documents and was therefore on notice of their existence before they were provided to him in discovery.

Furthermore, the evidence proffered by Hinton is a far cry from the type of evidence courts have found sufficient to satisfy the actual innocence standard. Courts found that this gateway standard was met when "the petitioner has made a credible and compelling showing of his actual innocence," *Rivas v. Fischer*, 687 F.3d 514, 552 (2d Cir. 2012), such as where a petitioner provides: (1) new DNA evidence and expert testimony "call[ing] into question" the "central forensic proof connecting [the petitioner] to the crime," *as well as* "substantial evidence pointing to a different suspect," *House*, 547 U.S. at 554 (emphasis added); (2) "sworn statements of several eyewitnesses that [the petitioner] was not involved in the crime" *and* affidavits "that cast doubt on whether [the petitioner] could have participated" in the offense, *Schlup*, 513 U.S. at 331 (emphasis added); (3) a third party's consistent and repeated statement that they committed the offense, *Jones v. McKee*, 2010 WL 3522947, at *9–10 (N.D. Ill. Sept. 2, 2010); *Carringer v. Stewart,* 132 F.3d 463, 478–79 (9th Cir. 1997) (finding that the petitioner opened the actual innocence gateway where another person testified under oath that he committed the offense and separately boasted to other individuals that he set-up the petitioner); or (4) documentary evidence indicating that the petitioner was in another country on the day of the offense and five affidavits from individuals stating that the petitioner was outside the country at the precise time of the offense, *see Garcia v. Portuondo*, 334 F. Supp. 2d 446, 452–56 (S.D.N.Y. 2004).

Hinton was convicted of twenty-six counts of perjury by affidavit and one count of theft after a five-day jury trial. The jury heard testimony from Montgomery County court officials and investigators who concluded that Hinton had falsified affidavits to obtain waivers of fees. The jury heard that Hinton failed to disclose the true nature of his assets, including a six-figure income,

13

vehicle ownership, and receipt of government assistance. ECF No.70-16 at 18-19; ECF No. 70-17 at 53-59. The jury heard evidence of other deception, including Hinton falsely claiming his ex-wife's children as his own to increase his unemployment benefit (ECF No. 70-15 at 66-67; ECF No. 70-17 at 27-28, 56-57) and falsifying documents from a non-existent dentist to avoid a court date (ECF No. 70-15 at 132-155; ECF No. 70-16 at 17-18).  Considering the evidence introduced at trial, Hinton's "actual innocence" evidence cannot be deemed reliable. Indeed, Hinton depends upon an affidavit claiming identity theft when substantial evidence was introduced at trial that he falsified and submitted twenty-six affidavits to Montgomery County circuit court. The documents submitted by Hinton, which were created or initiated by Hinton's report of identity theft, simply do not meet the standard for a finding of actual innocence.

Having failed to pass through the actual innocence gateway, the Court finds that Grounds One, Three, Four, Five, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen are procedurally defaulted.

### C.  Merits Review

### (i)        Ground Two- Failure to Grant Prompt Hearing on Motion to Discharge Counsel

In Ground Two Hinton contends that the trial court erred because it failed to afford him a prompt hearing pursuant to Maryland Rule 4-215(e) after he made a written request to discharge his appointed counsel. ECF No. 1 at 5. The record reflects that Hinton filed a *pro se* motion for appointment of new legal counsel on March 9, 2015 (ECF No. 70-1 at 26-31) and a hearing was held on August 13, 2015. ECF No. 70-13.[6] The circuit court recounted the extensive history of

---

[6]        An intervening hearing was held on May 1, 2015 wherein Hinton was given the opportunity to address the court. He did not bring up his pending motion to discharge his counsel at that time. ECF No. 70-12.

Hinton's complaints about his appointed counsel, his decisions to keep his appointed counsel despite those complaints, the delays Hinton's complaints caused, and the repeated warnings from the court that termination of his appointed counsel would require Hinton to retain counsel or represent himself. *Id.* at 6-8. The circuit court concluded that Hinton had been a "master of delay," and the allegations against his counsel lacked merit. *Id.* at 8-9. The circuit court found there was no meritorious reason to discharge appointed counsel and Hinton advised the court he would proceed *pro se*. *Id.* at 9.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. 2254(a). Because Ground Two does not state a federal claim and is based solely upon an interpretation of Maryland law, it is not cognizable on federal habeas review. See *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991).[7]

**(ii)    Ground Nine- Denial of Pretrial Bond**

In Ground Nine Hinton contends that he was "capriciously, maliciously, vindictively and repeatedly held without bond from February 9, 2015 to November 12, 2015." ECF No. 1-2 at 5. Hinton further contends that his pretrial detention interfered with his ability to properly prepare for his trial. *Id.* Hinton's challenge is akin to a challenge of pretrial confinement, which is not cognizable on habeas review once the petitioner has been convicted. *See Gerstein v. Pugh,* 420

---

[7]     To the extent there is any overlap between Maryland Rule 4-215(e) and the constitutional requirements for waiver of counsel, the Court finds that Hinton's Claim Two is limited to a complaint that he did not receive a prompt hearing on his *pro se* motion to discharge counsel. In any event, as described above, the circuit court thoroughly reviewed the record and Hinton's complaint and determined that no good cause existed to terminate Hinton's appointed counsel. *See United States v. Perez*, 661 F.3d 189, 191 (4th Cir. 2011) (An indigent defendant can demand a different appointed lawyer only with good cause).

U.S. 103, 119 (1975) (citing *Frisbie v. Collins,* 342 U.S. 519 (1952); *Ker v. Illinois,* 119 U.S. 436 (1886)). Accordingly, Hinton is not entitled to habeas relief on this claim.

## IV. CONCLUSION

Having found that the Petition for Writ of Habeas Corpus does not present a claim upon which federal habeas relief may be awarded, this Court must consider whether a certificate of appealability should issue. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). Hinton may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

By separate Order which follows, the Petition for Writ of Habeas Corpus shall be denied and dismissed and a certificate of appealability shall not issue.[8]

\_\_11/18/2022_____     /s/_____
Date                                                    GEORGE J. HAZEL
                                                             United States District Judge

---

[8] On October 31, 2022, Hinton filed a Motion and Request to be Enlarged for Bail/Personal Recognizance Pending Review. ECF No. 72. Considering the denial of Hinton's Petition, this motion is also denied as moot.